Case number 25-1158, James K. Knight, Petitioner v. National Transportation Safety Board and Federal Aviation Administration. Ms. Vassar-Brown for the Petitioner. Ms. Vaz Gomez for the Respondents. Good morning, Council. Good morning, Your Honors. May it please the Court, I'm Elizabeth Vassar-Brown on behalf of Petitioner James Knight. He is present in the courtroom, and I have reserved two minutes for rebuttal. Petitioner Mr. Knight is a commercial pilot, and he mistakenly ingested his son's 5-ounce ADHD medication instead of his own cholesterol medication. Three days later, he tested positive on a random DOT drug test. At the time of the medication mix-up, Mr. Knight was dealing with a family crisis. His son was gravely ill. He was on multiple trips to the ER. He was sleep-deprived, frantic, and didn't realize that he had taken his son's medication. The FAA revoked all of his FAA certificates, and he appealed because he did not intentionally take the medication, and he never felt the effects of it. And importantly, case law is settled that an accidental ingestion is a reason for the FAA to consider a different sanction than revocation. All right, so counsel. Oh, sorry. Go ahead. Counsel, I mean, the dispute here between Mr. Knight and the NTSB is really just about the appropriate penalty, whether it should be revocation, or there should be some medication to a suspension. But there's no dispute that this substance was taken. So, I mean, given that it's just about the penalty, and both penalties are available to the NTSB, I'm not sure how that means. I'm not sure how, in those circumstances, can sustain an argument that the board was not substantially, or that the FAA was not substantially justified in pursuing revocation, where it's just about the penalty. Right, but the case law, Your Honor, is that an accidental ingestion is a reason to mitigate the sanction from revocation. It's a reason to mitigate, but it's not as though mitigation is required. Revocation is also an appropriate penalty. I don't believe so, Your Honor. In this particular case, it was stipulated. Mr. Knight, he admitted that he had taken the medication, that there was a violation, it was a positive drug test. But all of the case law gives the pilot, the respondent in the underlying enforcement action, the opportunity to bring that evidence before the NTSB. And he did, and he got mitigation, but we're not here litigating the merits of that decision. We're talking about the EAJA attorney's fees, and it's a pretty high bar to secure those. And I agree with that, Your Honor, but EJA is always based on reasonableness. This was an accidental case. This wasn't intentional conduct. So they're basically placing Mr. Knight in the same category as somebody who intentionally took a prohibited drug, perhaps cocaine or something like that. That's not this case. In those cases, I agree that revocation is warranted. Not in this case, when you have an innocent act, and instead of taking all those facts into consideration, they just went with revocation. And if you look at the Henry— But didn't he know that he took that medication before he submitted himself to the drug test? That is correct, Your Honor. But also, you have to look at the context of that. At the time that he realized that he had taken his son's Vyvanse medication, he had been to the ER twice, sleep deprived, frantic, still worrying about his son. So at the moment when he was cleaning up, realizing, hey, I probably took this, he actually even called off work because he wasn't fit to fly because he didn't have proper crew rest. So at the time when he realized that he really wasn't, if you will say, cogent like we are here today, like, oh, I took something I shouldn't have. I probably need to report it. So at that time, you have to put that in context as to why he didn't report it. And he never thought of it as being in his system. It was a medication for a 12-year-old child, small 12-year-old child, to focus at school. So he never put the two and two together and said, well, I shouldn't have reported it. And I have to say, Your Honor, he was sanctioned for that. He did receive a 90-day suspension, which he wound up actually serving about a 900-day suspension as he litigated this case. To me, this is a tremendously sympathetic case, but you have a couple of things going against you here. One is standards of review. This is a double deference case. Tell me if you disagree with this. But it seems to me it's a double deference case because the board has to give some deference to the FAA's choice of sanction under Martin v. Osherk at the merits level. And then at the EJA level, the board is deciding whether the sanction is reasonable. And then on the EJA, at the EJA stage, we're deciding whether or the board is deciding whether the FAA's position is reasonable. So it's reasonableness on top of reasonableness, which is pretty tough. But I do agree with that, Your Honor. But recall that the ALJ and the agency. So it was unreasonable to think that the FAA's choice of sanction was reasonable. Well, no, the board and the ALJ both said it was unreasonable. They both said it was excessive. So that's in the underlying enforcement action. Now, when we switch over to EJA, the main reason the board overturned the administrative law judge was because it said, well, the FAA proved that the violation of the statute, the regulation, 120.33 Charlie, sorry, Bravo, but that was conceded before the hearing. They didn't need to prove that. That was gifted to them. There was a stipulation. Mr. Knight actually stipulated that there was a verified positive drug result. They didn't need to prove it. There was no need for a hearing. They didn't need to go through all of that and make him incur all those legal fees when they had, as Judge Tapia said, were gifted it on a silver platter. They didn't need a hearing. They had a meritorious case for some sort of action, right? They established violations. It's the same proceeding, whether it ends up in revocation or suspension. Of course, they had reason to pursue something. They did. Your argument is where your argument is compelling to me is just on the choice of sanction question. Correct, but I think it has to be reasonable, and they have to follow their own precedent. In Henry and in Myers, it's the very same situation. Pilots tested positive after taking a family member's medication, and they tested positive during a random drug test in both of those cases. And let me point out, in neither of those cases could I find any stipulations that the pilots stipulated that there was a verified positive drug test, nor did the FAA stipulate no intentional ingestion and no impairment. Those are really important facts. That was all before the— That was revocation and option. It is an option, but it's not reasonable, Your Honor. In Henry and in Myers, they did go for revocation. The FAA did. It sounds like the reason revocation is reasonable is because you could be affected by that medication. And so right now, you seem to be giving us arguments that suggest that, well, he didn't say anything before the actual drug test because he didn't feel the effects. And he also thought that because it was a 12-year-old's medication, that he wouldn't feel those effects. But revocation is a particular possible sanction for when anybody takes any medication. But he just didn't think about it. At the time that he— That's not my question. My question is, is revocation a possible sanction for when anybody takes medicine, inadvertent or not, because of the potential effects of a medication? Yes, Your Honor. But also, if you look at the totality of the circumstances here, revocation is not reasonable, and it didn't follow FAA precedent. If you look at Henry and Myers, very same cases, the FAA did go for revocation. The administrative law judge said that's not reasonable. It was excessive, just like Mr. Knight. And they reduced him to suspensions. The FAA didn't appeal. They didn't appeal because that was—that comported with their safety mandate. There was punishment, and it was reasonable based on the fact. Mr. Knight— But can't there be two outcomes, meaning two things are true? Revocation is a possible sanction. It's just that you don't think it was reasonable in this circumstance. Not just me, Your Honor. The NTSB and the administrative law judge both found that that was excessive. So then when we get to the AGEIS standard, it has to be reasonable in law and fact. And in both cases, it wasn't reasonable. Obviously, the NTSB found that it was excessive. Now, the reason why they denied AGEIS fees was simply because they said the FAA proved that he violated the regulation. But they didn't have—it was given to them on a silver platter, as Judge Tapia said. It was admitted before the hearing. There was no need for them to have to prove it. They had the burden of proof. They had a stipulation. That was the reason why the board denied AGEIS fees. They just said that because the FAA proved that regulation, the violation of that regulation, that the FAA was substantially justified. What do you do with the medical certificate requirements? You have a very appealing case, assuming there's remedial discretion to select an appropriate sanction. But those regs, as I understand them, there is a legal rule that you have to have the medical certificate in order to get the flying certificate. And there is a bright-line eligibility requirement that if you have a positive test within two years, which was the case here, you can't keep the medical certificate. And those aren't discretionary judgments. Those are legal rules. So you are right, Your Honor. So when a pilot has an airman certificate, in this case a commercial pilot or an ATP, an air transport pilot certificate, that's one. Doesn't mean you can fly because you have to have a medical certificate. So the FAA did revoke everything. But the law judge and the NTSB board both said that wasn't reasonable. Just focus on the medical. Right. So on the medical. So then the question is, well, the FAA did, I'm sorry, the NTSB did give him his medical back. Then the next step would be for them to do something like make him reapply because of that. And if he did reapply, then they would look at his record and then decide whether or not that two-year would apply. But that's not valid at this stage, Your Honor. Sorry, just help me out. I'm not getting this yet. Why was it unreasonable for the FAA to take the position that if there is a positive drug test within two years under our regs, we must revoke the medical certificate? Well, under FAM. It's still, there's still under FAM. And that's cited in our briefs. And it's actually even in the FAA brief. And it's a case from this court. And it is. Oh, yeah, right, right. I'm going to, I'm starting with the regs. My next question is going to be FAM, which seemed to say that those regs are mandatory. I don't think that's what FAM says. I think FAM says you have to, it's discretionary. You can't, it's not strict liability. It's, you still have to apply reasonableness. FAA wanted to revoke. The board reduced the revocation to a suspension. And we set aside the reduction and said the board order would be contrary to law, not just arbitrary and capricious, contrary to law. If it allowed a certificate, medical certificate, less than two years after, in that case, it was refusing the drug test, but it's the same set of eligibility regs. Less than two years after the violation, no discretion. So, in that case, if the FAA would have suspended, so he would have had a 90-day suspension, and then he can reapply for a medical. That wasn't, it wasn't that Mr. Knight was not sanctioned. He was sanctioned. I get that. And so that would include the medical. And so, but. The regs are eligibility requirements. Right, but I. Positive drug test within two years, no medical certificate. It sounds pretty harsh to me, but that's what the regs says. Well, exactly. And the board disagreed with that. And that was never repealed. Well, there was a notice of appeal, and then it was withdrawn. And maybe they, if this had been decided by a federal court, there would have been a different outcome. I don't think so, your honor. But, but with respect to the medical, it was suspended. Now, did it, was it mandatory for two years that he couldn't fly? That's a separate question. It has nothing to do with the revocation. And the sanctioned him for 90 days. And actually, it turned out to be 2 years anyway. Okay. Charles, anything else? Judge Ralph. Okay, we'll give you some time on rebuttal. Thank you. Your honors. Ms. Gomez. Yes, your honor welcome. Thank you. May it please the court Jessica Gomez for the. Your honor, I'd like to clarify a couple of points 1st. The petition in this case holds an airline transport pilot, not a commercial pilot certificate. That is the highest level. Of pilot certificate an individual can hold and he did fly for a commercial airline. I might, I might be getting the terms wrong, but he has a license certificate to fly. The ground transport and both of those are predicated on his having a medical certificate. Correct. He can only exercise his flying privileges when he has a valid medical certificate. The ground instructor certificate. There are portions that he can exercise without a valid medical certificate. Your honor. So, let's just, let's just cut to the chase on this. The position is in this case was that. In this really unusual case, accidental ingestion in the middle of a family emergency. Right? The sanction for that is going to be revoking all his licenses. Yes. Why is that? Assuming assuming for a 2nd, that. There's discretion to pick a sanction. Why is that a reasonable choice? Yes, your honor. So, 1st, I will clarify it is really not an unusual case. So, the FAA sees these cases of accidental ingestion claims day in and day out. Yeah, a lot of claims. Like, I didn't know there was pot in the brownies. Sure. That's not this case. Come on. This case is quite compelling on the record. Your honor. This is a case where the petitioner by his own admission reported for pilot duties as a commercial airline transport pilot certificate, knowing he had taken a prescription drug, not prescribed to him, knowing it was intended to affect a person's mental state. Not knowing what was in the drug, making no efforts to find out, not attempting to remove himself from safety sensitive work, not attempting to report the ingestion to his employer, but rather reporting for work and putting the public at risk, knowing of his ingestion. Those are those are compelling facts where it would have been unthinkable for the agency not to enforce its safety regulations. And the other point I would like to clarify. Unthinkable to impose no sanction. And that's that's an important point. Your honor. The petitioner has made a claim that the underlying case was about sanction. And that is simply incorrect. Even in the middle of the hearing. I'll spot you. I'll spot you all that. You were reasonable in bringing the action. You were reasonable in forcing a hearing to see if this would be credible. You were reasonable in developing the facts to figure out what the most appropriate sanction was. I mean, you did all that. The ALJ made forget if it was his or her, but the ALJ made the findings and then you took the appeal on the purely legal question that just bright line rule. Even even on these facts, we're just going to take away all his licenses. Yes, so there was a cross appeal, your honor, and the appeal petitioner side claims that it was a valid affirmative defense and affirmative defense is exculpatory. And that was a petition that he took and requested dismissal of the case in its entirety. In other words, the finding of violation, there's a lot of confusion in the case. In these cases with loose usage of the phrase affirmative defense, right? It's. It is not an affirmative defense in the sense of. Eliminating any wrongdoing or exposure. Right, which, which it would be if and only if the drug were taken for legitimate medical use. So, just put all that aside, it's just a question of. The exculpatory. Significance of the fact the facts surrounding this ingestion, which is. Accidental in the middle of a family emergency, which he takes 1 of his built 1 of his kids pills by mistake. Correct your honor, you are correct. Those are the facts of the case. However, the regulation at issue doesn't address the circumstances or thoughts of the individual at the time of consumption of the drug, right? It regulates an individual reporting for a safety sensitive function, putting the public at risk. Having the prohibited drug in their system, and this is a case where petitioner knew he had a substance in his system made no efforts to mitigate that or remove himself from safety sensitive duties and reported for work. There's even testimony that. He was concerned when he was called for random random drug testing by his employer, right? He had testimony that he did discuss the accidental ingestion with his wife. So, contrary to the representations made moments before your honor, this wasn't something made or something that occurred that he brushed off and never thought of again. Right? Throughout the days leading up to his random drug test, there's testimony that he thought of it. Yeah, he made no effort to remove himself from safety sensitive functions and has published sanction policy, making it very clear that this conduct reporting for safety. Sensitive work is so egregious that it warrants revocation and. Pursuit and I don't think the guidance helps you the guidance cuts against you guidance says. Guidance says that violation generally. Supports revocation correct. That implies that there are going to be unusual cases where it doesn't. And on the facts of this case, where the petitioner knew he had ingested a prescription medication that was not prescribed to him. He knew it was a medication intended to affect 1's mental state. And yet he reported for safety sensitive duties to an air carrier to pilot and sly the public. That shows a willful disregard for public safety and aviation safety and the FAA was. At a minimum, it's a low bar, right? Was reasonable. They had a plausible claim in pursuing this case and they did. And just to emphasize where petitioner in this case repeatedly throughout the litigation requested dismissal of the case in its entirety. In other words, repeatedly throughout the record in the middle of the hearing dismissal, a finding of no violation to post hoc characterize it as this case was all about sanction is simply incorrect and revisionist history of the record as it stands. Let me ask you about the medical. Eligibility requirements, which I think is the strongest part of your case, but. Suppose you had the same facts here. Accidental 1 pill family emergency and now change change the actual facts to. The pilot goes to the office. Or the field or whatever, and immediately does not make himself available to fly goes in and self reports and said, this is what happens. And then you do a drug test. Automatic revocation on those facts. Your honor, I'm having trouble with the hypothetical, because in this case, we have random drug testing. So, if it's a testing, so anything like a random, reasonable suspicion when available to perform a safety sensitive function is what triggers those testing. It seems like on on your theory, there would be a mandatory. Mandatory revocation no matter how accidental or. Falls free the circumstances were. I'm trying to take out of the case. The inculpatory facts from that Thursday morning, when the pilot shows up and. Makes himself available and doesn't disclose until. He gets hit with a drug test. Right? So, under if you're asking about the part 67 medical standards, is that correct? Under those standards, there's no mens rea requirement. It does require a verified positive drug test, which implicitly means the verified positive drug test. So, in your hypothetical, where the individual would not have been subject to random drug testing, because they remove themselves from safety sensitive duties and we're not available to perform, it would not be a drug test. Right? And that's something that he could have done. He could have gone to his doctor. He could have had requested a drug test to see if what was in his system to see if he was in a. A position where he could report for safety sensitive work. He didn't do that. And all of that would have you don't think there would have been a drug test. On facts like this, the D. O. T. drug testing regulations provide for several different types of drug testing. The drug testing at issue in this case was a random drug test. So it was fortuitous that his employer even spectacularly. Correct. Correct. And it could, the agency would argue good luck right? In the interest of aviation safety, I get that. But the only other testing that would be possible would be reasonable suspicion testing. I'm pushing you on whether you are really. Willie really want to own the rule that any positive drug test. Automatically compels revocation on the facts of this case. No, no. On a non drug test on any case. So, on a positive accidental ingestion and no attempt to report for work. So, the medical regulations require a verified positive drug test verified goes into the requirements for verification, which is tied to D. O. T. drug testing. So, if there is a D. O. T. positive drug test, that's verified. That does require mandatory revocation of the medical certificates because the individual is not medically qualified does not meet the part 67 medical standards. So, even self reporting doesn't assist. Your honor, if there is a positive D. O. T. verified drug test, then the individual does not meet the medical standards. They will need to reapply once the 2 years pass. What is so a person who self reports are they still subject to the drug test? An individual who removes themselves from safety sensitive duties would no longer be subject to drug testing because they're not available to perform. Okay, I'm sorry. The drug test. The drug test that triggers the automatic. Revocation can only happen. When an individual has reported for safety sensitive functions, correct? So, if an individual is not available to perform, they're not subject to to D. O. T. let's say facts of this case. Except the pilot stayed home on Thursday morning. He would not have drawn the drug test. It's not just a system where, okay, on Thursday, we're going to test. No, no. So there's there's random drug testing. Usually it's done on a quarterly basis. The facts in this case are quite compelling. The petitioner did call in sick. He should have reported a day earlier to work than he didn't. He apparently was so sleep deprived. He chose to call in sick for a day. He knew how to do that. He could have if he had reported for work, it's very likely that they would have tested in that day. The very next day when he did report for work 2 days after ingesting the medication that is when he was subjected to the random drug testing. What happens if there is a revocation of the medical certificate and or the pilot's license? Can I can that individual reapply? Yes, your individual there's a way. How would the FAA treat this? I mean, would you not are you are you effectively asking for a lifetime ban on these facts? No, your honor. A revocation is not a lifetime ban. It's in place for a year and then the individual is free to reapply. Okay. I think I'll start around. Okay, thank you. Thank you, your honors. I do want to clear up something with respect to Mr. Knight, knowing that he had that prohibitive substance in the system. He testified that he didn't know that he, as a lay person, he doesn't know how long that was stayed in the system. And with respect to this sanction, but yes, that doesn't help because he's still reporting not knowing how long something is. Well, at the time, again, when when he realized he had probably taken the medication. He was still dealing with a very ill child and not thinking ahead. He wasn't thinking ahead and that was his testimony. He just never really dawned on him again. It was a, you know, he never felt the effects of the medication. Some arguments for mitigation, right? Mitigation from revocation to. Suspension, yes, your honor, but starting with the premise that revocation was generally available for this situation, not under Henry and Myers, your honor. I, I, I've, I would say that those cases are directly on point and they even address your question, your honor. And that is about the medical certificate. In both of those cases, the 90, the, the, the revocation was removed and not affirmed. And the suspension was put in place that applied to their medical as well. Those are decisions or yes, your honor. Those were decisions and the FAA did not appeal them. The FAA accepted those outcomes. So they do have a safety mandate. We're not, we're not disputing that. But then it still has to be reasonable as to the sanction that the FAA imposes. And with respect to wanting this case to be dismissed, I ask you to look at my trial brief, which was submitted before the hearing. This was always about the sanction. Mr. Knight didn't say, you know, I made a mistake and there should be no sanction. It was just the point that it shouldn't have been revocation. Okay. Judge Childs, anything? Judge Rao? Anything else? Just in, in, in leaving you today, I just say that this case was not, this is not a case of wrongdoing. This was an, an unintentional act that led to a two-year suspension, which should have been a 90-day suspension. We don't think the FAA was reasonable and, and that the, the NTSB board erred when they found that finding the, finding us the, the sanction of, I'm sorry, the violation of the regulation supported substantial justification. And we just say that that is not the case. We ask that the case be remanded and each of these awarded. Thank you very much. Case is submitted.
judges: Katsas; Rao; Childs